ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
JAMIE K. COMBS, ESQ.
Nevada Bar No. 13088
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, NV 89134
Telephone:  (702) 634-5000
Facsimile:   (702) 380-8572
Email:  ariel.stern@akerman.com
Email:  jamie.combs@akerman.com

*Attorneys for Bank of America, N.A.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>JUSTIN DAVID WARD, and<br>AUTUMN BETH WARD<br>    Debtors. | Case No.: 10-26698-mkn<br><br>Chapter 7<br><br>**BANK OF AMERICA, N.A.'S OPPOSITION TO PARADISE HARBOR PLACE TRUST AND VENDANGE PLACE TRUST'S MOTION TO RETROACTIVELY ANNUL THE AUTOMATIC STAY [ECF NO. 46]**<br><br>Date of Hearing: June 5, 2019<br>Time of Hearing: 2:30 PM<br>Place:  Courtroom #2 |

Secured creditor Bank of America, N.A., (**BANA**) opposes Paradise Harbor Place Trust and Vendange Place Trust's (the **Trusts**) motion to retroactively annul the automatic stay, ECF No. 46. Pursuant to LR 9014, Exhibits A–AA are filed separately as attachments to the Declaration of Jamie K. Combs, Esq.

**I.    INTRODUCTION.**

The Court should deny the Trusts' motion to retroactively annul the automatic stay. Madiera Canyon Homeowners Association (**Madiera** or **HOA**) and its agent Nevada Association Services (**NAS**) violated the automatic stay by pursuing foreclosure while the property was protected by the stay afforded by Justin and Autumn Ward's (the **debtors**') Chapter 7 bankruptcy petition. As a result

1

of Madiera and NAS's actions, the HOA foreclosure sale was void *ab initio*. In other words, the sale to the Trusts[1] was a legal nullity, or does not exist as a matter of law.

The Trusts contend in their motion BANA lacks standing to complain about a void *ab initio* sale, through which they seek to strip BANA's $335,670.00 interest in the property. The Trusts are incorrect—Ninth Circuit precedent is clear the sale was void, and BANA has standing to object to the void sale. On the other hand, the Trusts lack standing because they did not participate in the original bankruptcy and are not a "party in interest" who can obtain relief in this Court.

Finally, there is no cause to retroactively annul the stay. The Trusts obtained title—free of any sort of express of implied warranties—at a 96% discount. It should not be allowed to now run into bankruptcy court to seek protection from the HOA's actions that violated the automatic stay. The Court should deny the Trusts' motion.

## II.   FACTUAL BACKGROUND.

### A.   The Deed of Trust History

The borrowers are the prior record title owners of the property located at 2601 Vendange Place, Henderson, Nevada 89044 (the **property**). Combs Dec. at **Ex. A**. In December 2008, the borrowers obtained a $335,670.00 loan secured by a deed of trust recorded against the property. *Id*. The deed of trust was assigned to BANA via assignment of deed of trust. Combs Dec. at **Ex. B**.

### B.   The HOA History and Violation of the Stay

On September 1, 2010, the debtors filed their voluntary Chapter 7 petition in this case. Combs Dec. at **Ex. C** at 1. In their schedules, BANA is listed as secured creditor. *Id.* at 19. The debtors' statement of intention indicated they would abandon the property to the bankruptcy estate. *Id*. at 40. On December 7, 2010, the debtors obtained a discharge. Combs Dec. at **Ex. E**. During the bankruptcy, the Court did not grant any party relief from the automatic stay with respect to the property. Combs Dec. at **Ex. C**.

Upon information and belief, the debtors failed to pay the HOA all amounts owed for their monthly assessments. On February 14, 2011, Madeira, through its agent NAS, recorded a notice of

---

[1] Vendange Place Trust purchased the property at the HOA foreclosure sale and conveyed its interest to Paradise Harbor Trust less than two months later. Combs Dec. at **Exs. M and N**.

2

48934508;1

delinquent assessment lien. Combs Dec. at **Ex. F**. Madeira, through NAS, only sent the notice to the debtors directly, and did not send copies of the notice to the debtors' bankruptcy counsel or the bankruptcy trustee even though NAS was aware of the bankruptcy. Combs Dec. at **Ex. G and Ex. O** at 12:20-13:2, 17:17-23. On April 6, 2011, Madiera, through its agent NAS, recorded a notice of default and election to sell to satisfy the delinquent assessment lien. Combs Dec. at **Ex. H.** The HOA, through NAS, mailed the notice directly to the debtors but did not mail the notice to debtors' bankruptcy counsel or the bankruptcy trustee. Combs Dec. at **Ex. I and Ex. O** at 17:12-18:1. On April 15, 2012, Madiera, through NAS, recorded a notice of foreclosure sale. Combs Dec. at **Ex. J**. The notice was again mailed to the debtors, but not sent to their bankruptcy counsel or the bankruptcy trustee. Combs Dec. at **Ex. K and O** at 21:6-22:7.

The debtors' bankruptcy was closed on May 22, 2012. Combs Dec. at **Ex. L**. On this date, the trustee implicitly abandoned the property, lifting the automatic stay as to the property. Every action Madiera and NAS took toward foreclosure before this date was invalid.

**C.     Madiera forecloses; Vendange Place Trust conveys to Paradise Harbor Trust.**

Two weeks later, on June 8, 2012, Madiera, through its agent NAS, foreclosed selling the property to Vendange Place Trust. Combs Dec. at **Ex. M**. A foreclosure deed in favor of Vendange Place Trust was recorded on June 19, 2012. *Id.* NAS wrote in the foreclosure deed that the sale price at the foreclosure sale was $6,350.00. *Id*. The property's fair market value at the time was $225,000. Combs Dec. at **Ex. P**.

On July 26, 2012, Vendange Place Trust transferred its interest in the property Paradise Harbor Trust. Combs Dec. at **Ex. N.**

**D.     Paradise Harbor Trust first attempts to "strip down" BANA's lien.**

On September 4, 2012, Paradise Harbor Trust filed for chapter 11 bankruptcy protection. Combs Dec. at **Ex. Q**. It valued the property at $190,000.00 in its bankruptcy petition. *Id.* On November 8, 2012, Paradise Harbor Trust filed a motion to value the property, and to strip BANA's lien of the unsecured portion exceeding the fair market value of the property. Combs Dec. at **Ex. R**. The bankruptcy court did not grant the motion, and instead dismissed the bankruptcy case. Combs Dec. at **Ex. S**.

3

48934508;1

### III. THE TRUSTS LACK STANDING BECAUSE THEY ARE NOT "PARTIES IN INTEREST"

The concept of "standing" plays an important role in bankruptcy cases because of the myriad parties potentially affected by the proceedings. By limiting the parties that may be heard in a case to "parties in interest," the doctrine promotes the efficient administration of bankruptcy cases. The Code does not define "party in interest" but states that "[a] party in interest, including the debtor, the trustee, a creditor's committee, an equity security holder's committee, a creditor, an equity security holder, or any indenture trustee, may raise and appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109.[2] Courts have long recognized that this is not an exhaustive list—the term "party in interest" is to be broadly construed and determined on a case-by-case basis. *In re Johns-Manville Corp.*, 36 B.R. 743, 747–48 (Bankr. S.D.N.Y. 1984), *aff'd*, 52 B.R. 940 (S.D.N.Y. 1985); *accord In re Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). However, courts have generally limited standing to "all persons whose pecuniary interests are directly affected by the bankruptcy proceedings." *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir. 1993).

The Trusts are not "parties in interest" because they are not a debtor, a creditor, or a trustee. The Trusts do not qualify as "parties in interest" under the expanded list of parties articulated in section 1109(b), which guides the Ninth Circuit's interpretation in a chapter 7 case. The Trusts will not be harmed if the court does not annul the stay. They purchased the property at a sale without any warranties, for a mere $6,350. If anything, the Trusts received a windfall for their possession of the property for the last several years when they never held valid title in the first place. To the extent the Trusts may suffer any harm, their recourse should be against the HOA or its agent, who improperly foreclosed in violation of the stay. While harm is only part of the inquiry, a court must also consider

---

[2] Although this case involves a Chapter 7 bankruptcy, Section 1109(b) provides guidance to determine who may be a "person of interest" here. *Goldenberg v. Deutsche Bank Nat'l Trust Co. (In re Papazov),* 610 F. App'x 700 (9th Cir. 2015) (holding that the enumerated list of "parties in interest" in § 1109(b) may guide a court in determining the scope of potential movants under Rule 5010 in a chapter 7 bankruptcy, and in determining whether the movant "lacked a sufficient stake in [the debtor's] bankruptcy proceeding"); *Nintendo Co. v. Patten (In re Alpex Computer Corp.),* 71 F.3d 353 (10th Cir. 1995) (holding that, while "party in interest" is "generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings," case law implicitly confines the concept to "debtors, creditors, or trustees, each with a particular and direct stake in reopening cognizable under the Bankruptcy Code.").

4

48934508;1

the movant's role in the underlying bankruptcy. *See In re Alpex Computer Corp.*, 71 F.3d at 358 ("[Movant] cannot claim a similar stake by implanting [its status in a separate civil action] into a bankruptcy proceeding in which it has never participated"). Since the Trusts' interest in the property did not arise until after the bankruptcy case terminated, when Vendange Place Trust purchased the property at the HOA foreclosure sale and Paradise Harbor obtained Vendange Place Trust's interest, neither was a "party in interest" with standing to seek relief in debtor's bankruptcy case in which it never participated.

Additionally, the primary purpose of chapter 7 bankruptcy is to liquidate estate assets and distribute the proceeds to creditors, under the supervision of the Court and without unsanctioned interference from creditors of the debtor. *See In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983) ("When interpreting the meaning of Code terms such as 'party in interest,' we are governed by the Code's purposes."). Reopening a chapter 7 bankruptcy almost seven years after its initial closing, at the behest of nonparticipant parties who seek to have the automatic stay annulled nunc pro tunc, is contrary to this chapter 7 objective. The Trusts did not participate in the original bankruptcy and they did not have a pre-petition relationship with the debtors. The Trusts seek relief from the automatic stay on behalf of the HOA and its agent, neither of whom requested annulment. The Trusts purchased the property in a "buyer beware" situation, without any warranties whatsoever, for a mere 4% of the property's fair market value. Considering these facts, the Court should not consider the Trusts to be "parties in interest" for purposes of obtaining relief in this Court.

### IV. MADIERA AND NAS VIOLATED THE AUTOMATIC STAY.

Upon filing of a bankruptcy petition, the automatic stay under 11 U.S.C. § 362 immediately applies. As the Ninth Circuit noted, "the scope of protection embodied in the automatic stay is quite broad, and serves as one of the most important protections in bankruptcy law." *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214 (9th Cir. 2002). The stay requires the status quo be maintained precluding and nullifying post-petition actions against property of the debtor or the estate. *Id.; see also In re Rader*, 488 B.R. 406, 412 (9th Cir. BAP 2013). The stay is designed to protect debtors from all collection efforts while they attempt to regain their financial stability.

5

48934508;1

Congress stated:

> It gives the debtor a breathing spell from his [or her] creditors. It stops **all collection efforts, all harassment, and all foreclosure actions**. It permits the debtor to attempt a repayment or organization plan, or simply be relieved of the financial pressures that drove him into bankruptcy.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6296-97 (emphasis added). The scope of protections provided for by section 362 is to be interpreted very broadly, and any exceptions set forth in section 362(b) construed narrowly. *In re Gasprom, Inc*., 500 B.R. 598, 606 (9th Cir. BAP 2013). The various protections under section 363 include to create, perfect, or enforce a lien against either property of the estate of the debtor. 11 U.S.C. §§ 362(a)(4) and (a)(5).

The property was protected by the automatic stay at the time the HOA continued to perfect its foreclosure. On September 1, 2010, the borrowers surrendered the Vendange Place property to their bankruptcy estate. *See* Combs Dec. at **Ex. D** at p. 41. Thus, the property became property of the estate protected by the automatic stay. *See* 11 U.S.C. § 362(a)(4). While Debtors received their discharge on December 7, 2010, the final decree was not entered until May 22, 2012. *See* Combs Dec. at **Ex. C**. The automatic stay as to property of the estate generally does not terminate until the closing of the case. *See* 11 U.S.C. § 362(c)(1); 11 U.S.C. § 554(c) (together providing for the termination of the stay, as to scheduled property of the estate, upon closing of the case).

The automatic stay was still in place when Madiera and NAS recorded the notice of delinquent assessments in February 2011, the notice of default in April 2011, and the notice of foreclosure sale in April 2012. All of these actions were taken to create, perfect, or enforce a lien, and were prohibited by the automatic stay. See 11 U.S.C. §§ 362(a)(4) and (a)(5).

V. **ACTS TAKEN DURING A BANKRUPTCY'S STAY ARE VOID *AB INITIO*.**

In the Ninth Circuit, acts taken in violation of the automatic bankruptcy stay are void *ab initio*—null and void from the beginning. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992); *see also In re Shamblin*, 890 F.2d 123, 125 (9th Cir. 1989) ("Judicial proceedings in violation of [the] automatic stay are void."); *In re Stringer*, 847 F.2d 549, 551 (9th Cir. 1988) ("Any proceedings in violation of the automatic stay in bankruptcy are void."); BLACK'S LAW DICTIONARY (10th ed. 2014);

6

48934508;1

*Wutzke v. Bill Reid Painting Service, Inc.*, 151 Cal.App.3d 36 (1984). Where a sale is void, no action is necessary to have the sale deemed invalid. *Schwartz,* 954 F.2d at 572.

The Nevada Supreme Court has confirmed that, pursuant to *Schwartz*, HOA foreclosure sales conducted in violation of the automatic stay are void *ab initio*. In *LN Management*, the Nevada Supreme Court affirmed the district court's award of summary judgment in favor of the loan servicer where the HOA foreclosure sale was conducted in violation of the automatic stay. 399 P.3d at 360–61. The Nevada Supreme Court has also held an HOA foreclosure sale to be void if the automatic stay was in effect at the time the Notice of Delinquent Assessment Lien was recorded, regardless of whether the stay had been lifted by the time the HOA foreclosure sale actually occurred. *SFR Investments Pool 1, LLC v. Green Tree Servicing, LLC*, No. 68324, 2016 WL 6092947, at *1 (Nev. 2016) (unpublished decision).

Here, Madiera and NAS violated the automatic stay when they recorded the notice of delinquent assessments, notice of default, and notice of foreclosure sale against the property. These acts, taken in violation of the stay, were void *ab initio*, or in other words, of no legal effect. As a result, the Trusts did not obtain valid title to the property.

## VI. BANA HAS STANDING TO ASSERT THE SALE WAS VOID *AB INITIO*.

The Trusts argue BANA lacks standing to assert an automatic stay violation. ECF No. 26 at 2. The Trusts are wrong. BANA has both constitutional and prudential standing to challenge the HOA's sale as void and oppose the Trust's attempt to retroactively annul the stay.

### A. BANA has Article III Standing.

Article III standing requires (1) an injury in fact, (2) that is fairly traceable to the actions of the defendant,[3] and (3) that likely will be redressed by a favorable decision. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125, 134 S. Ct. 1377, 1386 (2014); *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 874 (9th Cir. 2011). **First,** BANA suffered (or will suffer, if the motion is granted) an injury in fact—the potential extinguishment of its deed of trust.[4] **Second,** the

---

[3] "In bankruptcy proceedings, the injury may also be traceable to the action of the bankruptcy court." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873, fn. 4 (9th Cir. 2011).
[4] BANA reserves the right to challenge the effect of the HOA's sale on other grounds, including that the sale was unfair and oppressive and the property sold for a grossly low sales price, and because BANA did not receive proper notice of the sale.

harm is directly traceable to the HOA's violation of the automatic stay. Due to the HOA's unlawful sale, BANA is forced to defend claims by the Trusts that the HOA's sale extinguished BANA's deed of trust. There would be no injury to BANA had the HOA not foreclosed in violation of the stay. **Third,** a finding that the HOA sale violated the automatic stay and is therefore void will redress the harm to BANA. BANA will also be redressed by a decision denying the Trust's request to retroactively annul the automatic stay, which will ensure BANA's deed of trust is not extinguished by the unlawful sale.

### B. BANA has Prudential Standing.

A party can satisfy statutory standing if it is "within the zone of interests sought to be protected by the statutory scheme." *Air Courier Conference of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 523 (1991); *see also Int'l Forex*, 247 B.R. 284, 291 (Bankr.S.D.Cal. 2000).

#### *1. The automatic stay provides protection for debtors and creditors alike.*

Courts in the Ninth Circuit have repeatedly reiterated that the automatic stay protects both debtors and creditors. *Hillis Motors, Inc. v. Hawaii Auto Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993); *Johnston Envtl. Corp. v. Knight (In re Goodman),* 991 F.2d 613, 618-19 (9th Cir. 1993); *Computer Communications, Inc. v. Codex Corp. (In re Computer Communications)*, 824 F.2d 725, 731 (9th Cir. 1987); *McRoberts v. S.I.V.I. (In re Bequette)*, 184 B.R. 327, 332 (Bankr.S.D.Ill 1995), *Homer Nat'l Bank v. Namie*, 96 B.R. 652, 655 (W.D.La. 1989).

Congress intended to provide protection to creditors through the automatic bankruptcy stay. "The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment." *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986). Congress was clear about this intended protection:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against debtor's property. Those who acted first would obtain payment of their claim in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.

H.R. Rep. No. 595, 95th Cong., 1st Session 340-42 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News (U.S.C.C.A.N.) 5787, 6297; *see also In re Killmer,* 501 B.R. 208, 212 (Bankr. S.D.N.Y. 2013) ("Since the automatic stay is meant to prevent creditors from racing to the courthouse

8

48934508;1

to the detriment of other creditors, the Court sees no reason why a creditor who has been harmed by a stay violation should not be able to seek redress for its injury."); *United States v. Miller*, 2003 WL 231099606, at *7 (N.D. Tex. Dec. 22, 2003) ("Less obvious but no less important interests protected by § 362 are those of creditors, who are clearly intended to benefit from § 362") (internal quotations omitted); *Litton Loan Servicing, L.P. v. Rockdale County, Ga. Am. Lien Fund, L.P. (In re Howard)*, 391 B.R. 511, 515 (Bankr. N.D. Ga. 2008) (assignee of debt secured by debtors' residence had standing to invoke automatic stay and seek determination the tax sale was void).

BANA has standing to challenge a foreclosure sale conducted in violation of the automatic stay because BANA is a party in interest and because the stay was meant to protect creditors from the possibility of an unequitable distribution. If the stay is retroactively annulled, it will result in an unequitable distribution between the creditors, to the detriment of BANA, who abided by the stay.

### 2. *Pecan Groves Does Not Apply*.

The Trust's reliance on *Pecan Groves* is misplaced. *In re Pecan Groves of Arizona*, 951 F.2d 242 (9th Cir. 1991). **First**, *Pecan Groves* is procedurally distinguishable. *Pecan Groves* involved a series of three separate bankruptcies. During the pendency of the first bankruptcy, a creditor foreclosed in violation of the automatic stay. The bankruptcy was dismissed, as was a second bankruptcy. *Id.* at 243-244. On the third bankruptcy, the trustee filed an adversary to unwind the creditor's foreclosure during the first bankruptcy. *Id.* at 244. A *new* creditor then moved to intervene in the adversary. *Id.* The bankruptcy court allowed intervention, but ultimately ruled against the trustee and intervening creditor. *Id.* The intervening creditor appealed; the trustee did not. *Id.* at 244. On these facts, the Ninth Circuit held the intervening creditor lacked independent standing to appeal.

The right to appear and be heard is much broader than the right to appeal. During a bankruptcy case, any party in interest may appear and be heard in a contested matter, and parties in interest include all creditors. *See* 11 U.S.C. § 1109(b); *Goldenberg v. Deutsche Bank Nat'l Trust Co. (In re Papazov)*, 610 F. App'x 700 (9th Cir. 2015) (holding that party in interest standard under 11 U.S.C. § 1109(b) guides bankruptcy courts in Chapter 7 cases); *Westwood Cmty. Two Ass'n v. Barbee (In re Westwood Cmty. Two Ass'n)*, 293 F.3d 1332, 1337 (11th Cir. 2002) (holding that "a party in interest has a right to be heard in a Chapter 7 bankruptcy proceeding").

9

48934508;1

In contrast, standing to appeal in bankruptcy cases involves the more restrictive "person aggrieved" standard. *See In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 874 (9th Cir. 2011); *Matter of Point Ctr. Fin., Inc.*, 890 F.3d 1188, 1191 (9th Cir. 2018). That standard limits appellate standing to parties that have been "directly and adversely affected pecuniarily by an order of the bankruptcy court." *Id.* Similarly, standing to intervene in an adversary proceeding also is more restrictive than the "parties in interest" standard applied to contested matters. *See* Fed. R. Bankr. P. 7024; *see also Vermejo Park Corp. v. Kaiser Coal Corp.*, 998 F.2d 783, 790-91 (10th Cir. 1993) (holding that putative intervenor must show a "significantly protectable interest" in the adversary proceeding) (internal quotations and citations omitted). Intervenors in bankruptcy cases do not have automatically have standing to appeal; they must show that the challenged order "adversely affect[ed] the interests that served as the basis for intervention." *Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332, 1338 (9th Cir. 1992).

Here, BANA opposes a non-party's motion to retroactively annul the automatic stay. It is *not* appealing an order denying relief requested by the trustee, nor is it intervening into an adversary proceeding. BANA, as a party in interest whose interests will be directly and adversely affected by an order retroactively annulling the stay, clearly has standing to oppose the motion.

**Second,** *Pecan Groves* is factually distinguishable. the intervening creditor was *not* a creditor during the first bankruptcy, when the first creditor allegedly violated the stay. *Id.* at 243. The intervening creditor provided funds for a loan secured by the property *after* the first creditor's foreclosure in the first bankruptcy. *Id.* The stay-violating foreclosure sale could not have harmed the intervening creditor at the time it occurred because that creditor had not yet obtained any interest in the property. Therefore, the violating creditor's actions did not raise concerns of a "race of diligence" by one creditor to the detriment of another. Unlike the intervening creditor in *Pecan Groves*, BANA was a secured creditor at the time of the HOA's foreclosure sale. It abided by the stay, apparently to its own detriment, while the HOA raced to foreclosure without obtaining stay relief. At most, *Pecan Groves* stands for the proposition that a creditor with *no* interest at stake when a stay violation occurs has no standing to appeal from an order denying the *trustee's* challenge to that violation. It

10

does not follow that a creditor holding a substantial interest in the property at the time of the stay-violating act cannot challenge the act as void.

The Ninth Circuit's post-*Pecan Groves* decisions are consistent with this conclusion. Only a year after the Ninth Circuit decided *Pecan Groves*, the Ninth Circuit in *Schwartz* made "clear that violations of the automatic stay are void, not voidable." *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992). The Court explained: "[g]iven the important and fundamental purpose of the automatic stay . . . . we find that Congress intended violations of the automatic stay to be void rather than voidable." *Id.* Otherwise, "if violations of the automatic stay were merely voidable, creditors would be encouraged to violate the stay. . . 'by increasing the possibility that violators of the automatic stay may profit from their disregard for the law, provided it goes undiscovered for a sufficient period of time.'" *Id.* at 572. The Court concluded: "we will not reward those who violate the automatic stay." *Id.*

The Ninth Circuit again revisited the issue of retroactive annulment in *In re National Environmental Waste Corp.*, 129 F.3d. 1052 (9th Cir. 1997). In determining whether the lower court abused its discretion in granting retroactive annulment, the Ninth Circuit considered the prejudice to the creditor who violated the automatic stay, as well as the prejudice to other parties in the bankruptcy case who confirmed the bankruptcy plan. *Nat'l Environ. Waste Corp.*, 129 F.3d at 1055-1056. The BAP followed suit in *Fjelstedt,* providing a list of factors to consider when determining whether to grant retroactive annulment, including "weighing the extent of prejudice to creditors;" and the "costs of annulment to debtors and creditors." *In re Fjeldsted*, 293 B.R. 12, 25 (B.A.P. 9th Cir. 2003). If annulling the automatic stay comes at a significant cost or prejudice to another creditor—a factor the court should consider in its analysis—it only makes sense that such creditor must have standing to challenge the retroactive annulment.

Consistent with this reasoning, the Nevada supreme court has concluded a beneficiary of a first deed of trust has standing to enforce a violation of the automatic stay through seeking a declaration the sale is void. *LN Mgmt. LLC*. 399 P.3d 359. There, the court considered whether an HOA's foreclosure sale, conducted in violation of the automatic bankruptcy, could extinguish a bank's deed of trust. *Id.* The purchaser of the property at the foreclosure sale argued the bank, as another creditor, had no standing to challenge the HOA's sale. *Id.* at 360, fn 1. The court

11

unequivocally rejected the purchaser's argument that the bank holder lacked standing, and concluded the HOA's foreclosure sale was void *ab initio* and could not extinguish the deed of trust. *Id.* at 361. While this opinion is not binding, it is persuasive. The Nevada HOA super priority lien is a creature of state law. The Nevada supreme court's conclusion that a sale conducted in violation of a bankruptcy stay cannot extinguish a bank's deed of trust is worthy of deference. *See Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003) (noting the policy to defer to the state court on significant state law matters).

As this court previously explained: "[r]ote application of the *Pecan Groves* holding leads to the anomalous situation where the same act in violation of the automatic stay is void for some parties, but not void for others." *In re Leeds*, 589 B.R. 186, 200 (Bankr. D. Nev. 2018). "To hold otherwise would have the effect of encouraging the possibility that violators of the automatic stay may profit from their disregard for the law, provided it goes undiscovered for a sufficient period of time." *Id.* (citing *Schwartz*, 954 F.2d at 572).

Numerous other courts and circuits agree creditors can challenge violations of the automatic stay, and appeal from orders retroactively annulling the automatic stay. *See In re Popp,* 323 B.R. 260, 267 (B.A.P. 9th Cir. 2005) (distinguishing *Pecan Groves* and holding a lienholder has standing to object to an authorized sale of property that serves as collateral for the creditor's lien)*; St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 540 (5th Cir. 2009); *In re Peeples*, 880 F.3d 1207, 1216 (10th Cir. 2018) (holding that section 362 provides relief to debtors as well as creditors, when alleging harms related to inequitable treatment related to another creditor's violation of the automatic stay); *Matter of Ring*, 178 B.R. 570, 578 (Bankr. S.D. Ga. 1995); *In re Killmer,* 501 B.R. 208, 212 (Bankr. S.D.N.Y. 2013) ("the Court sees no reason why a creditor who has been harmed by a stay violation should not be able to seek redress for its injury. In any event, an act entered in violation of the stay is void whether or not a party makes a motion to declare it so."); *In re Bennett,* 317 B.R. 313, 318 (Bankr. D. Md. 2004) ("[b]ecause Plaintiff [a creditor] is a person to whom the stay was intended to protect, and because Plaintiff asserts an injury that is precisely the type of injury the stay was meant to prevent, Plaintiff has constitutional and statutory standing. . . To hold otherwise would destroy the rights of creditors who obey the automatic stay and reward the violators of the stay for

48934508;1

their unlawful conduct."); *United States v. Miller*, 2003 WL 23109906 at \*7 (N.D.Tex. 2003) (holding creditors are "clearly parties in interest under the meaning of the Bankruptcy Code [where] they have a pecuniary interest that was adversely affected" by a postpetition transfer of property).

For example, in *Ring*, the debtors owned property subject to a first and second deed of trust. *In re Ring*, 187 B.R. at 573. The first deed holder moved to lift the automatic stay to foreclosure. *Id.* Before the motion was granted, the first deed holder continued advertising the foreclosure, allowing it to foreclose the same day the stay was lifted. *Id.* The second deed holder did not appear at the sale, and the property was sold for an amount too low to cover any amounts owed to it. *Id.* The second deed holder initiated an adversary proceeding, claiming the first deed holder violated the automatic stay by advertising the foreclosure before obtaining stay relief, which prejudiced the second because it was unable to protect its interest at foreclosure. *Id.* The first argued the second lacked standing to challenge its actions in violation of the stay. *Id.* at 574. The court rejected the argument, concluding: "because of the clearly distinguishable factual and legal bases" on which *Pecan Groves* rested, "a holder of a lien in property which has been transferred in violation of the automatic stay has standing to seek a declaratory judgment that such transfer is void ab initio." *Id.* at 581.

The facts here are distinguishable from *Pecan Groves* and more closely aligned with *LN Management, Ring,* and the numerous other cases cited above. BANA held an interest in the property at the time of the HOA's void foreclosure sale. An order validating what is an otherwise void foreclosure sale, changing it from a sale which has no effect on the deed of trust, to one which may potentially extinguish it, will cause significant harm to BANA. BANA clearly has standing to oppose the Trust's motion. To conclude otherwise would lead to the absurd result that although BANA has the ability to challenge and appeal an order in the state court on the same issue, it has no standing to challenge or appeal an adverse order directly affecting its interest in bankruptcy court.

### VII. THE TRUSTS HAVE OFFERED NO "CAUSE" FOR ANNULLING THE AUTOMATIC STAY.

The Trusts are not entitled retroactive relief by this Court. While the court has wide latitude in granting relief from the automatic stay, *retroactive* annulment should generally only be granted only in unique and compelling circumstances since the violator is essentially asking the court to exercise its equitable powers and balance the equities between the parties. *See Mataya v. Kissinger*

13

48934508;1

*(In re Kissinger)*, 72 F.3d 107, 109 (9th Cir. 1995); *In re Nat'l Envtl. Waste Corp.,* 129 F.3d 1052, 1055 (9th Cir. 1997); *Shaw v. Ehrlich*, 294 B.R. 260, 272 (W.D. Va. 2003), *aff'd sub. nom. Wiencko v. Ehrlich (In re Wiencko)*, 99 Fed. App'x 466 (4th Cir. 2004). In balancing the equities, the significance of the automatic stay weighs heavily against the party seeking annulment. *Moore v. U.S. Dep't of Hous. & Urban Dev.*, 350 B.R. 650, 655 (Bankr.W.D.Va. 2006).

*In re Fjeldsted* sets out a comprehensive list of factors for the Court to consider to determine whether annulment is properly awarded. *In re Fjeldsted*, 293 B.R. 12, 15 (9th Cir. B.A.P. 2003) ("Thus, the Ninth Circuit applied a balancing-of-the-equities standard, even though it articulated a narrow and cautious approach."); *see also* ECF No. 46 at 5.

**First**, the Trusts falsely claim "there is no prejudice to the Bank as it was on notice of the action of the Association, sent the NOD and the Notice of Sale, as required by NRS 116.31162 through NRS 116.31168." *Id*. at 5.  But other than stating there was an HOA foreclosure sale, this statement is false. BANA did not have notice of the foreclosure proceeding because Madiera and NAS did not send the notice of lien, notice of default, or notice of sale to BANA or MERS, the stated beneficiary of the deed of trust at the time each notice was recorded. Combs Dec. at **Exs. G, I, and K**.  Had Madiera and NAS provided the notices to MERS, MERS would have forwarded them to BANA. Combs Dec. at **Ex. T** at ¶¶ 3-7.  BANA would have retained Miles BANA's policy was to retain Miles, Bauer, Bergstrom & Winters, LLP to pay the superpriority amount when it received a foreclosure notice. *Id.* at ¶ 6.  In accordance with this policy, BANA retained Miles Bauer "several thousand" times to submit superpriority payments between 2009 and 2013. *Id.* at ¶ 7.  The failure to properly serve the notice of default and notice of sale thus deprived BANA of an opportunity to protect its deed of trust by tendering the superpriority lien amount in accordance with its procedure, prejudicing BANA. See *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018).

Even if the HOA or NAS had provided notice to BANA, BANA should not be required to make payment on void lien recorded in violation of the automatic stay. By requiring BANA to pay the superpriority portion of a void lien recorded in violation of the stay, the HOA is encouraged to continue violating the stay.

. . .

14

48934508;1

**Second**, BANA would be extremely prejudiced by the retroactive annulment of the stay because the Trusts waited **almost seven years** to seek relief from this Court. Vendange Place Trust took title to the property on June 8, 2012 and conveyed its interest to Paradise Harbor Trust on July 26, 2012, yet they filed their motion to annul the stay on May 1, 2019. ECF No. 46. The Trusts waited too long to request relief and as such it would be inequitable to retroactively annul the stay. Notably, neither the HOA nor its agent NAS have *ever* requested retroactive annulment of the stay.

**Third**, the Trusts represent to this Court "the Bank had many opportunities to protect its interest in the Property and simply failed to do so." ECF No. 46 at 6. Again, the Trusts are wrong. Madiera and NAS did not provide any of the pre-foreclosure notices to BANA or MERS, the record beneficiary of the deed of trust at the time of the sale. *See supra* at 11. The Trusts also state, "after receiving the Notice of Sale from the Association, the Bank could have taken steps to stop the sale." ECF No. 46 at 6. However, Madiera and NAS did not send the notice of sale to BANA (or MERS) and even if they had, the notice indicated the sale would take place on May 11, 2012. Combs Dec. at **Ex. J and Ex. K**. The sale was postponed and without further notice conducted June 8, 2012. Combs Dec. at **Ex. M**. BANA could not have "showed up at the auction and bid on the Property to protect its interest" as suggested by the Trusts in their motion. ECF No. 46 at 6.

**Fourth**, there is little or no prejudice to a third-party purchaser such as the Trusts that are claiming ownership of property worth $225,000 at the time of sale for $6,350.00—an approximate 96% discount. And, in this case, the deed through which the Trusts claim title was not subject to any warranties, express or implied. The Trusts knew when they purchased the property at such a deep discount that there were risks involved in a purchase of a property without warranties. The Trusts are **not** bona fide purchasers. The purpose of the bona fide purchaser doctrine is to protect an innocent party against interests about which it has no reason to know—*not* against interests it knows about but against which it believes it can win a quiet title lawsuit. To qualify, a purchaser must show it purchased the property "(i) for value; and (ii) *without notice of a competing or superior interest in the same property*." *Berge v. Fredericks*, 591 P.2d 246, 247 (Nev. 1979) (emphasis added). The *bona fide* purchaser rule is concerned with whether a purchaser takes title unaffected by

15

48934508;1

latent equity of which he has no notice, constructive or actual. *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp, Inc.*, 366 P.3d 1105, 1116 (Nev. 2016).

The Trusts are not some naïve, happenstance foreclosure bidder. The Trusts' manager and corporate representative, Eddie Haddad, has extensive experience in purchasing properties at Nevada foreclosure sales, which eliminates any *bona fide* purchaser argument. *See, e.g. Yates v. West End Fin. Corp.*, 25 Cal. App. 4th 511, 523 (1994) (buyer's experience relevant in assessing *bona fide* purchaser claim); *Countrywide Home Loans, Inc. v. United States*, No. CV F 02 6405 AWI SMS, 2007 WL 87827, *12 (E.D. Cal. Jan. 9, 2007) (extensive real estate experience a factor against the buyer's claims to *bona fide* purchaser status). He has been a Nevada licensed real estate agent broker for twenty years. (**Ex. U** at 5:19-7:1; **Ex. V** at 8:6-10 and 28:13-18; **Ex. W** at 6:20-25; **Ex. X** at 17:3-5.) He began purchasing properties at Nevada HOA foreclosure sales in 2012 and has purchased between 100 and 1000 properties at HOA foreclosure sales. (**Ex. V** at 6:22-7:3 and 5:24-6:18; **Ex. W** at 7:21-8:5 and 8:6-9.) For several years, Mr. Haddad has attended foreclosure sales five days a week, fifty-two weeks a year. (**Ex. Y** at 23:1-23.) On each purchase, Mr. Haddad creates an entity, like the Trusts, for the sole purpose of acquiring title to the property.[5] (**Ex. W** at 6:24–8:9, 9:10-15, 10:29-21.)

Given Mr. Haddad's experience and the number of properties he and his entities have purchased at HOA foreclosure sales, Mr. Haddad and the Trusts understood the state of the law at the time they bought this property. In this case and related cases, Mr. Haddad has testified:

- He has sole discretion on whether to purchase a property and what to pay for it; (**Ex. V** at 19:2-20)

- He purchases the properties at HOA foreclosure sales with the intention to rent and then resell the properties; (**Ex. V** at 22:14-21)

- He is aware of the Nevada split-lien system and understands the first deed of trust holder has the right to protect themselves by tendering the superpriority prior to the HOA foreclosure sale; (**Ex. Y** at 68:22-69:24; **Ex. AA** at 14:18-15:6)

---

[5] Mr. Haddad's other entities include, but are not limited to, Saticoy Bay, LN Management, Daisey Trust, and Foxtail Dr. Trust.

16

48934508;1

- He understands litigation will ensue with the deed of trust holders following his purchases of properties at HOA sales (**Ex. AA** at 17:15-25) and many of the properties he has purchased are tied up in litigation; (**Ex. U** at 21:18-19; **Ex. V** at 13:2-8)

- The price he is willing to pay depends on the potential for litigation (**Ex. X** at 17:15-17) and whether there is a deed of trust on the property (**Ex. W** at 15:4-19; **Ex. X** at 17:15-17; **Ex. Z** at 11:1-5 and 13:1-10). He is not willing to pay as much if there is an active deed of trust because he knows the possibility of litigation; (**Ex. X** at 17:15-17; **Ex. Z** at 11:1-5 and 13:1-10)

- Before purchasing properties, Mr. Haddad examines the Nevada Legal News and the Clark County Recorder's office to learn about properties coming up for sale. (**Ex. U** at 8:25-10:17; **Ex. V** at 14:5-9 and 22:22-23:9; **Ex. W** at 11:8-16.) He looks for anything of record, including deeds of trusts and notices of sales, and also obtains additional information regarding the properties from the assessor's office and the MLS; (**Ex. U** at 8:25-10:17; **Ex. V** at 14:5-15:20, and 22:22-23:9; **Ex. W** at 11:24-12:3)

- He is aware he is purchasing properties below fair market value; (**Ex. Z** at 17:6-23)

- He does not speak with the trustee's before the sale to see whether the lender has tendered the superpriority; (**Ex. V** at 27:23-28:9; **Ex. W** at 14:2-7; **Ex. AA** at 15:3-15)

Mr. Haddad is a sophisticated distressed property purchaser aware of the apparent and obvious risks in purchasing distressed properties. *See Albice v. Premier Mort. Servs. of Wash, Inc.*, 276 P.3d 1277, 1284 (Wash. 2012) (courts "consider the purchaser's knowledge and experience with real estate" in determining whether a person is a bona fide purchaser); *see also Yates v. West End Financial Corp.*, 25 Cal. App. 4th 511, 523 (Cal. Ct. App. 1994) (California courts also consider the buyer's background and experience in real estate). The entities Mr. Haddad created to hold title to this property, Vendange Place Trust and Paradise Harbor Place Trust, simply cannot be bona fide purchasers of free and clear title to the property.

**Fifth**, there are significant costs to creditors of the estate if a non-party to the bankruptcy, the Trusts, receives a significant windfall. Any loss that the Trusts believe they have suffered could be recovered from Madiera, NAS, or other responsible party that purported to conduct a sale that it had no legal authority to conduct.

**Fifth**, the Trusts have had the benefit and use of the property since 2012—for almost seven years—without making a single payment to BANA. The Trust have collected rent for almost seven

17

48934508;1

years, while BANA continues to make taxes and insurance charges on its defaulting debtor's behalf. The equities clearly shift in BANA's favor.

None of the factors in *Fjeldsted* point the finger at the non-offending creditor as a basis for annulling the automatic stay. Cause does not exist to annul the stay, and the Court should deny the Trusts' request.

Alternatively, to the extent the court is inclined to retroactively annul the stay, the court should only retroactively annul the stay for the limited purpose of allowing the HOA to complete a sub-priority foreclosure sale. This preserves both the Trust's *and* BANA's interests in the property.

## VIII. DAMAGE TO BANA OUTWEIGHS ANY BENEFIT TO RETROACTIVE ANNULMENT

Equitable balancing weighs in favor of BANA who is a secured creditor with a valid lien for $335,670.00 against the property. BANA complied with the automatic stay and in reliance on the stay refrained from taking further action to protect its interest. On the other hand, the HOA violated the stay and sold the property at an HOA foreclosure sale to the Trusts for less than 5% of the property's fair market value. It would be inequitable to retroactively annul the automatic stay to allow the HOA's foreclosure sale to extinguish BANA's deed of trust when the HOA unfairly pursued foreclosure on the debtor's property in violation of the automatic stay. The equities undoubtedly weigh in favor of denying retroactive annulment.

## IX. CONCLUSION.

BANA requests the Court deny the Trusts' motion to retroactively annul the automatic stay.

Respectfully submitted, this 22nd day of May, 2019.

**AKERMAN LLP**

*/s/ Jamie K. Combs*
ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
JAMIE K. COMBS, ESQ.
Nevada Bar No. 13088
1635 Village Center Circle, Ste. 200
Las Vegas, Nevada 89134

*Attorneys for Plaintiff Bank of America, N.A.*

18

48934508;1

# CERTIFICATE OF SERVICE

1. On May 22, 2019 I served the following document:

**BANK OF AMERICA, N.A.'S OPPOSITION TO PARADISE HARBOR PLACE TRUST AND VENDANGE PLACE TRUST'S MOTION TO RETROACTIVELY ANNUL THE AUTOMATIC STAY [ECF NO. 46]**

2. I served the above-named document by the following means to the persons as listed below: *(Check all that apply)*

☒ **a.   ECF System**

(Electronic Service) Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated y that Court's facilities.

☒ **b.   United States mail, postage fully prepaid**

Michael F. Bohn, Esq.
Nikoll Nikci, Esq.
Law Offices of Michael F. Bohn, Esq., Ltd
2260 Corporate Circle, Suite 480
Henderson, Nevada 89074
*Attorneys for Movants Paradise Harbor Place Trust &Vendange Place Trust*

J. William Ebert, Esq.
Karen Kao, Esq.
Lipson Neilson, P.C.
9900 Covington Cross Drive, Ste. 120
Las Vegas, NV 89144
*Attorneys for Madeira Canyon Homeowners Association*

☐ **c.   Personal Service**

I personally delivered the document(s) to the persons at these addresses:

☐   For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the documents(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the documents(s) in a conspicuous place in the office.

☐   For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ **d.   By direct mail (as opposed to through the ECF System)**

**AKERMAN LLP**
1635 VILLAGE CENTER CIRCLE, SUITE 200
LAS VEGAS, NEVADA 89134
TEL.: (702) 634-5000 – FAX: (702) 380-8572

19

48934508;1

| | | |
|---|---|---|
| ☐ | **e.** | **By fax transmission** |
| ☐ | **f.** | **By messenger** |

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed on:  May 22, 2019

| Carla Llarena | */s/ Carla Llarena* |
|---|---|
| (Name of Declarant) | (Signature of Declarant) |

AKERMAN LLP
1635 VILLAGE CENTER CIRCLE, SUITE 200
LAS VEGAS, NEVADA 89134
TEL.: (702) 634-5000 – FAX: (702) 380-8572

20

48934508;1